# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| **IN RE:** | ) | |
| **AGRIPROCESSORS, INC.,** | ) | **CHAPTER 7** |
| | ) | |
| **Debtor.** | ) | **Bankruptcy No. 08-02751** |
| | ) | |
| **JOSEPH E. SARACHEK, In his capacity** | ) | |
| **As Chapter 7 Trustee,** | ) | |
| | ) | **Adversary No. 10-9123** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **THE RIGHT PLACE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER ON THE COURT'S AUTHORITY TO HEAR AND DECIDE THIS CASE

This matter came before the Court to determine this Court's authority to hear and decide this case. The Court held a telephonic hearing on the issue. Desiree Kilburg appeared on behalf of Plaintiff, Joseph E. Sarachek, in his capacity as the Chapter 7 Trustee. Peter Arling and Kurt Gwynne appeared on behalf of Defendant, The Right Place, Inc. After hearing the arguments of counsel, the Court took the matter under advisement providing additional time for the parties to submit briefs.

## STATEMENT OF THE CASE

Plaintiff filed this adversary against Defendant alleging that Debtor had fraudulently conveyed funds to Defendant or made preferential transfers to Defendant.   The parties disagree about the Court's authority to hear and decide this matter.   Defendant argues that under the Supreme Court's recent decision in Stern v. Marshall, 131 S. Ct. 2594 (2011), the claims should not be heard or decided by this Court.   Defendant argues this Court should direct the parties to file a motion with the District Court to withdraw reference of this case.   Plaintiff disagrees arguing that under Stern, and the subsequent cases interpreting Stern, the fraudulent conveyance and preferential transfer claims in this case are core proceedings.   Plaintiff asserts this Court has full, dispositive authority.

The Court concludes that it need not determine whether the claims constitute core proceedings because at a minimum, the Court has jurisdiction to hear the matter and issue proposed findings of fact and conclusions of law for the District Court's review.

## BACKGROUND

On April 1, 2011, Defendant filed a Motion to Dismiss alleging the Complaint failed to state a cause of action.   The Court denied the Motion, but directed Plaintiff to file an amended complaint.   Plaintiff filed an Amended

Complaint on October 31, 2011.  Defendant filed an Answer on December 5, 2011.

Defendant denied the claims and presented six affirmative defenses.

The Court held a scheduling conference on December 22, 2011.  At the

scheduling conference, Defendant stated it did not believe the adversary claims

were core proceedings and questioned whether the case should be heard by the

Bankruptcy Court.  The Court scheduled a hearing on the question of its authority

to hear this case.  After hearing argument and taking briefing, the Court took the

matter under advisement.

## CONCLUSIONS OF LAW AND DISCUSSION

This Court dealt with the limited effects of the Supreme Court's decision in

Stern v. Marshall, in the recent opinion, City of Sioux City v. Civic Partners Sioux

City (In re Civic Partners Sioux City, LLC), Adv. Nos. 11-9045, 11-9046, Bankr.

No. 11-00829, 2012 WL 761361 (Bankr. N.D. Iowa Mar. 8, 2012).  The Court will

briefly reiterate its reasoning from that decision here, before discussing the parties'

arguments about Stern's effect on the facts currently before the Court.

**A.     Bankruptcy Court Jurisdiction and Authority to Enter Final Judgment**

Congress has provided that the United States "[d]istrict courts shall have

original but not exclusive jurisdiction of all civil proceedings arising under title 11,

or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Congress has

also provided:  "Each district court may provide that any or all cases under title 11

3

and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  28 U.S.C. § 157(a).  See Badami v. Sears (In re AFY, Inc.), 461 B.R. 541, 546 (B.A.P. 8th Cir. 2012) ("Congress has allowed district courts to refer cases and proceedings to the bankruptcy judges in its district.").  The Northern District of Iowa has, by standing order, referred all such cases to this Court.  In re the Referral of Bankruptcy Cases, No. 07-AO-16-P (Dec. 5, 2007).

The United States Code limits a bankruptcy court's authority to enter final judgments to "core proceedings."  In re AFY, Inc., 461 B.R. at 547; see In re Civic Partners Sioux City, 2012 WL 761361, at *5.  "Bankruptcy judges may hear and determine all cases under title 11 and all **core proceedings arising under title 11, or arising in a case under title 11**, referred under subsection (a) of this section, and may enter appropriate orders and judgments subject to review under section 158 of this title."  28 U.S.C. § 157(b)(1) (emphasis added).  Congress provided a specific, but not limited, list of matters that qualify as "core proceedings" in 28 U.S.C. § 157(b)(2).  In re AFY, 461 B.R. at 547.  Section 157(b)(2) specifically states:

> (2) Core proceedings include, but are not limited to--
> (A)  matters concerning the administration of the estate;
> . . .
> **(F)    proceedings to determine, avoid, or recover preferences;**
> . . .

4

(O)  other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

. . . .

28 U.S.C. § 157(b)(2) (emphasis added).

The United States Code also specifically identifies a category of cases over which bankruptcy courts may preside but do not have final dispositive authority. 28 U.S.C. § 157(c)(1); see In re AFY, 461 B.R. at 547; In re Civic Partners Sioux City, 2012 WL 761361, at *5.  Section 157(c)(1) provides:

(c)(1) A bankruptcy judge may hear a proceeding that is **not a core proceeding** but that is otherwise **related to** a case under title 11.  In such proceeding, the bankruptcy judge **shall submit proposed findings of fact and conclusions of law to the district court**, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1) (emphasis added).

Thus, as the statute specifically establishes, bankruptcy courts have final dispositive authority over core proceedings.  They also have jurisdiction over non-core, "related to" proceedings, but not final dispositive authority.  In those "related to" cases, bankruptcy judges must submit proposed findings of fact and conclusions of law (a report and recommendation) which the district court will review de novo.  See In re AFY, 461 B.R. at 547; In re Civic Partners Sioux City, 2012 WL 761361, at *5.  In sum, core proceedings are matters which "arise in" or

5

"arise under" title 11.  28 U.S.C. § 157(b)(1).  Non-core matters are those that are

simply "related to" a case under title 11.  28 U.S.C. § 157(c)(1).

## B.    The Effect of <u>Stern v. Marshall</u> on this Court's Authority to Hear and Decide this Case

To determine whether a matter is core and falls within the Court's

dispositive authority, this Court, and most others, have routinely relied on the list

of examples Congress provided in 28 U.S.C. § 157(b)(2).  The Supreme Court's

recent decision in <u>Stern v. Marshall</u>, noted an additional layer of analysis is

required in certain cases.

In <u>Stern</u>, the Supreme Court addressed whether a counter-claim by the

debtor's estate against a creditor that had filed a proof of claim, was a core

proceeding under the facts of that case.  <u>Stern</u>, 131 S.Ct. at 2598.  The Court first

concluded that the bankruptcy court had jurisdiction under 28 U.S.C.

§ 157(b)(2)(C), which specifically notes that core proceedings include "counter-

claims by the estate against persons filing claims against the estate."  <u>Id.</u> at 2604.

The Court, however, then noted:  "Although we conclude that § 157(b)(2)(C)

permits the bankruptcy court to enter final judgment on [the debtor's] counter-

claim, Article III of the Constitution does not."  <u>Id.</u> at 2608.  In so holding, the

Court stated:

> We conclude today that Congress, in one isolated respect, exceeded
> that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court
> below lacked the constitutional authority to enter a final judgment on

a state law counter-claim that is not resolved in the process of ruling on a creditor's proof of claim.

Id. at 2620.

Much has been written and discussed about the scope and implications of Stern v. Marshall. In re AFY, 461 B.R. at 547 ("there has been an enormous amount of discussion regarding the implications of Stern v. Marshall"); In re Civic Partners Sioux City, 2012 WL 761361, at *5 (same). Most courts, including this Court, have concluded that the Supreme Court should be taken at its word — that the holding in Stern is very narrow in spite of some language in the analysis that could be given a broader application or interpretation. See, e.g., In re AFY, 461 B.R. at 547 (the "Supreme Court itself has cautioned that its holding is a narrow one"); Tolliver v. Bank of America (In re Tolliver), 464 B.R. 720, 733 (Bankr. E.D. Ky. 2012) (noting Stern's "holding is a narrow one"); In re Civic Partners Sioux City, 2012 WL 761361, at *5 (same). The Supreme Court repeatedly used language to emphasize the narrowness of its holding. Stern, 131 S. Ct. at 2620 (noting the issue before the Court is "a narrow one" describing it as a "slight encroachment" on constitutional authority and noting again that its opinion was limited to Congress exceeding Article III in "one isolated respect"); see Tolliver, 464 B.R. at 733 (quoting In re Safety Harbor Resort & Spa, 456 B.R. 703, 715 (Bankr. M.D. Fla. 2011)); In re MPC Computers, LLC, 465 B.R. 384, 388 (Bankr. D. Del. 2012) ("the holding [in Stern] was a narrow one"); In re Olde Prairie Block

7

Owner, LLC, 457 B.R. 692 (Bankr. N.D. Ill. 2011) (noting this limiting language in determining that <u>Stern</u> was a narrow decision).

The Eighth Circuit B.A.P. has specifically concluded:  "Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."  <u>In re AFY</u>, 461 B.R. at 547 – 48; <u>see</u> <u>In re Civic Partners Sioux City</u>, 2012 WL 761361, at *5. This Court agrees that <u>Stern</u> was narrowly written and has applied it accordingly.

In <u>Civic Partners</u>, this Court specifically stated:

> <u>Stern</u> did not strike the entire structure in 28 U.S.C. § 157 allocating the division of authority into core and non-core proceedings. Similarly, <u>Stern</u> did not strike down or even address the other enumerated examples of core proceedings in § 157(b)(2)—other than the one it addressed—§ 157(b)(2)(C).  <u>In re AFY</u>, 461 B.R. at 547–48. <u>Stern</u> did not even strike down § 157(b)(2)(C) or otherwise state that counter-claims filed by the estate against a person filing claims against the estate are never core proceedings.  Instead, <u>Stern</u> simply provided guidance on how broadly § 157(b)(2)(C) could reach without exceeding constitutional limits stating:  "The Bankruptcy Court lacked the constitutional authority to enter a final judgment on a state law counter-claim that is not resolved in the process of ruling on a creditor's proof of claim."  131 S. Ct. at 2620.

<u>In re Civic Partners</u>, 2012 WL 761361, at *8.

## C.   The Parties' Arguments

Plaintiff here argues that the adversary claims are core proceedings to be adjudicated by the bankruptcy court.  Plaintiff argues the <u>Stern</u> holding is narrow,

and refers to the opinion's language that Congress exceeded its constitutional

authority in "one isolated respect" by allowing bankruptcy courts to enter final

judgments on counterclaims that could exist independent of the bankruptcy.

Plaintiff further argues:

> In seeking to recover prepetition payments from the Debtor to
> Defendant, the Trustee is asserting a right of recovery created by
> federal bankruptcy law, not state law, as the Bankruptcy Code creates
> the right to recover preferences and fraudulent conveyances.  The
> Bankruptcy Code is a public scheme for restructuring debtor-creditor
> relationship, and every bankruptcy proceeding necessarily involves
> "the exercise of exclusive jurisdiction over all of the debtor's
> property, the equitable distribution of that property among the
> debtor's creditors, and the ultimate discharge that gives the debtor a
> 'fresh start' by releasing him, her, or it from further liability for old
> debts."  Central Va. College v. Katz, 546 U.S. 356, 364, 126 S. Ct.
> 990, 996, 163 L.Ed.2d 945 (2006) (citation omitted).   The
> restructuring of debtor-creditor relations is arguably a 'public right.'
> See Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458
> U.S. 50, 71, 102 S. Ct. 2858, 2871, 73 L.Ed. 598 ("the restructuring
> of debtor-creditor relations, which is at the core of the federal
> bankruptcy power . . . may well be a 'public right'"); but see
> Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 56, 109 S. Ct. 2782,
> 2798, 106 L.Ed.2d 26, n. 11 (1989) ("We do not suggest that the
> restructuring of debtor-creditor relations is in fact a public right.").

(Pl.'s Br., ECF Doc. No. 33, at 3.).  In support of his position that the current

action is a core proceeding, Plaintiff specifically cites to In re Direct Response

Media, Inc., 466 B.R. 626 (Bankr. D. Del. 2012), In re Refco, Inc., 461 B.R. 181

(Bankr. S.D.N.Y. 2011), and In re Innovative Communications Corp., No. 08-

3004, 2011 WL 3439291 (Bankr. D.V.I. Aug. 5, 2011).  Plaintiff argues the Court

should not follow Samson v. Blixseth (In re Blixseth), No. 10-00088, 2011 WL

3274042 (Bankr. D. Mont. Aug. 1, 2011), as Defendant argues.  Instead, Plaintiff

urges the Court to follow <u>Refco</u>, <u>Direct Response Media</u>, and <u>Innovative</u>

<u>Communications Corporation</u>.   In the event the Court determines that these claims

are not core proceedings, Plaintiff argues the Court should treat the matters as non-

core related proceedings and submit proposed findings of fact and conclusions of

law to the District Court.

Defendant argues this Court cannot enter a final order in this adversary

primarily because Defendant did not file a proof of claim.  Defendant argues that

under the Supreme Court's holdings in <u>Stern</u> and <u>Granfinanciera, S.A. v.</u>

<u>Nordberg</u>, 492 U.S. 33 (1989), the Court has "very clearly declared that a

fraudulent transfer action against a defendant that did <u>not</u> file a proof of claim was

not part of the claims allowance process subject to resolution by the bankruptcy

court."  (Def.'s Br., ECF Doc. No. 32, at 9.)  In sum, Defendant argues:

> Indeed, if this Court were to exercise judicial power over the
> preferential and fraudulent transfer claims in the context of this case—
> where the Right Place has not filed a proof of claim—then Article III
> would be transformed from the guardian of individual liberty and
> separation of powers we have long recognized into <u>mere</u> <u>wishful</u>
> <u>thinking</u>.

(<u>Id.</u> at 10.)  Defendant further argues that "this Court may lack statutory basis to

exercise any judicial authority over this adversary proceeding."  (<u>Id.</u>)  Defendant

relies on <u>In re Blixseth</u>, 2011 WL 3274042, in arguing this Court cannot even

prepare findings of fact and conclusions of law in cases it cannot constitutionally

hear.

## D.    Case Law Addressing the Issue

Cases decided since Stern addressing whether an adversary to recover

fraudulent conveyances or preferential transfers is a core proceeding, when the

defendant has not filed a proof of claim, have come to mixed conclusions.  A

recent case from the Bankruptcy Court for the Southern District of New York

summarized the mixed conclusions and split of authority as follows:

> Reasonable people may differ over whether Stern's prohibition on the
> bankruptcy court's issuance of a final judgment extends to fraudulent
> transfer claims, at least where, as here, the defendant has not filed a
> proof of claim in the case and, therefore, the holding of Katchen v.
> Landy, 382 U.S. 323 (1966), and Langenkamp v. Culp, 498 U.S. 42
> (1990), which Stern found to comport with its holding, 131 S. Ct. at
> 2616 – 17, would not apply.  Compare Paloian v. American Express
> Co. (In re Canopy Fin. Inc.), 2011 WL 3911082, at *3 – 4  (N.D. Ill.
> Sept. 1, 2011), and Hagan v. Freedom Fid. Mgmt. (In re Fife), 2011
> Bankr. Lexis 3544, at *1 (Bankr. W.D. Mich. Aug. 22, 2011), adopted
> by, judgment entered by, 2011 U.S. Dist. LEXIS 106446 (W.D. Mich.
> Sept. 20, 2011), and Samson v. Blixseth (In re Blixseth), 2011 WL
> 3274042, at *11 – 12 (Bankr. D. Mont. Aug. 1, 2011) (holding that
> under Stern bankruptcy court lacks power to issue a final judgment on
> fraudulent transfer claim), with Heller Ehrman LLP v. Arnold &
> Porter, LLP (In re Heller Ehrman LLP), 2011 WL 4542512, at *4 – 6
> (Bankr. N.D. Cal. Sept. 28, 2011), and In re Safety Harbor Resort &
> Spa, 456 B.R. 703, 713 – 14 (Bankr. M.D. Fla. Aug. 30, 2011), and
> Miller v. Greenwich Capital Fin. Prods. (In re Am. Bus. Fin. Servs.,
> Inc.), 457 B.R. 314, 319 – 20 (Bankr. D. Del. 2011) (holding that
> bankruptcy court has power after Stern to issue a final judgment on
> fraudulent transfer claim); see also Springel v. Prosser (In re
> Innovative Commun. Corp.), 2011 WL 3439291, at *3 – 4 (Bankr.
> D.V.I. Aug. 5, 2011) (bankruptcy court has power to issue final

judgment in avoidance proceeding under 11 U.S.C. §§ 548 and 549, but might not under 11 U.S.C. § 544).

In re Refco Inc., 461 B.R. 181, 186 (Bankr. S.D.N.Y. 2011). The court in Refco

concluded that "Stern does not preclude the Court's issuance of a final judgment

on the Trustee's complaint." Id. at 185 – 86.

> Stern does not preclude the bankruptcy court from issuing a final judgment on a fraudulent transfer claim. Unlike the state law tortious interference claim in Stern, the Trustee's fraudulent transfer claim here "flows from a federal statutory scheme," and is "completely dependent upon adjudication of a claim created by federal law." Id. at 2614.

Id. at 187.

> In addition, the adjudication of fraudulent transfer claims in a bankruptcy context is a "particularized area of the law," because of the place such litigation often takes in the overall case and the familiarity of bankruptcy courts not only with the Bankruptcy Code's fraudulent transfer scheme but also with how such cases are developed, paid for, litigated and resolved in the multi-party bankruptcy context, which differs significantly from the two-party state law setting.

Id.

Another court, the Bankruptcy Court of the Southern District of Florida,

summarized the rationale as follows:

> [T]he claims asserted by the Trustee are authorized by, and arise under §§ 544(b) and 548 of the Bankruptcy Code. Such claims "may only be prosecuted by a bankruptcy trustee on behalf of a bankruptcy estate, and because a trustee and a bankruptcy estate are strictly creatures of the Bankruptcy Code, there would be no legal basis for this action were there no bankruptcy estate." In re Bujak, 2011 WL 5326038, *2 (Bankr. D. Idaho Nov. 3, 2011). These claims simply

12

would not exist but for the bankruptcy. <u>Heller Ehrman</u>, 2011 WL 4542512, at *5. The analysis does not change because § 544(b) authorizes a trustee to avoid a transfer that could be recovered under state law by an actual creditor of the debtor. <u>Bujak</u>, 2011 WL 5326038, at *3. This action is not prosecuted by one of the debtor's creditors to avoid a transfer under state law, but by a bankruptcy trustee as the official representative of the bankruptcy estate to avoid prepetition transfers under the Bankruptcy Code. <u>Id.</u> Although § 544 incorporates state law to provide the "rules of decision," the claim still arises under § 544 which is a federal bankruptcy cause of action stemming from the bankruptcy itself. <u>In re Universal Marketing, Inc.</u>, 2011 WL 5553280, *3 (Bankr. E.D. Pa. Nov. 15, 2011). In addition, "[a] determination that a proceeding is not a core proceedings [sic] shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

The <u>Stern</u> Court pointed out that the distinction in <u>Granfinanciera v. Nordberg</u>, 492 U.S. 33, 109 S. Ct. 2782 (1989), "between actions that seek to 'augment the bankruptcy estate' and those that seek 'a pro rata share of the bankruptcy <u>res</u>,' reaffirms that Congress may not bypass Article III simply because a proceeding may have <u>some</u> bearing on a bankruptcy case." <u>Stern</u>, 131 S. Ct. at 2618 (emphasis in original). While some courts may view this language as a new limit on a bankruptcy court's authority to finally resolve core proceedings such as fraudulent conveyance or preference actions, Judge Williamson observed in <u>Safety Harbor</u> that the <u>Stern</u> Court's use of the word "reaffirm" makes clear that nothing has changed. <u>Safety Harbor</u>, 456 B.R. at 717. Neither <u>Stern</u>, nor <u>Granfinanciera</u> hold that bankruptcy courts lack authority to enter final judgment in fraudulent transfer actions. "In fact, the Supreme Court [in <u>Granfinanciera</u>] went to great lengths to emphasize that issue was not even before it in that case." <u>Id.</u> (citing <u>Granfinanciera</u>, 492 U.S. at 64 n.19, 109 S. Ct. 2782). Indeed, the "sole issue in <u>Granfinanciera</u> was whether the Seventh Amendment conferred on petitioners a right to a jury trial in the face of Congress' decision to allow a non-Article III tribunal to adjudicate the claims against them." <u>Id.</u> Judge Williamson further noted in <u>Safety Harbor</u>, that "the language from <u>Granfinanciera</u> that some courts and commentators fear may limit bankruptcy courts' jurisdiction—language relied on by the <u>Stern</u> Court—has been the law for over twenty years." <u>Id.</u> Yet, neither Judge Williamson nor this Court is "aware of a single case during the

twenty years preceding <u>Stern</u> challenging a bankruptcy court's authority to enter final judgments in fraudulent conveyance actions." <u>Id.</u>

This Court's job is not to extend <u>Stern</u> to fraudulent transfer actions based on Supreme Court <u>dicta</u>, and in so doing, upend the division of labor between district and bankruptcy courts that has been in effect for nearly thirty years. <u>See</u> <u>Bujak</u>, 2011 WL 5326038, at *2 ("While the Supreme Court in the future may explain its decision, and could conceivably expand the reach of <u>Stern's</u> constitutional analysis, as a bankruptcy court, this Court need not do so.   Instead of attempting to predict the future, this Court should carefully apply <u>Stern's</u> holding in its cases, and refrain from extending that holding to facts different from those in <u>Stern</u>.");   <u>Heller Ehrman</u>, 2011 WL 4542512, at *6 ("After <u>Stern</u>, some courts have concluded that they cannot hear fraudulent conveyance claims as core proceedings.  They are focusing on the <u>dicta</u> of Stern, not its holding.  I believe that this approach thrusts unnecessary burdens on already overworked district courts, especially when bankruptcy courts have a particular expertise in and familiarity with avoidance actions.").   This Court concludes that the Trustee's fraudulent transfer claims are core proceedings stemming from the bankruptcy itself for which this Court has authority to enter final orders.  <u>Stern's</u> narrow holding does not apply to the claims at issue.

<u>In re Custom Contractors, LLC</u>, 462 B.R. 901, 907 – 08 (Bankr. S.D. Fla. 2011)

(footnote omitted).  There, the IRS filed no claim in the case.  <u>Id.</u> at 904 ("The IRS

further argues that the resolution of this action is not required for the claims

allowance process because the IRS filed no claim in this case . . . .").  The court

ultimately held: "the Trustee's claims are core proceedings stemming from the

bankruptcy for which the Court may enter final orders."  <u>Id.</u> at 910.

In <u>Official Committee of Unsecured Creditors v. Energy Coal Resources,</u>

<u>Inc. (In re Appalachian Fuels, LLC)</u>, Civ. No. 0:11-cv-128; Adv. No. 11-01041,

14

2012 WL 1344984, at *5 (E.D. Ky. Apr. 18, 2012), the District Court of the

Eastern District of Kentucky was faced with this issue when the defendants argued

the bankruptcy court lacked jurisdiction to "enter final orders and judgments in

fraudulent transfer and preference actions where . . . they have not filed proof of

claims against the bankruptcy estate."  The court held "Plaintiff's fraudulent

transfer and preference claims are statutorily defined core claims to which the

holding of <u>Stern</u> does not apply, and therefore the Bankruptcy Court has authority

to enter final judgments on such claims pursuant to 28 U.S.C. § 157(b)(1)."  <u>Id.</u> at

*8.

> A bankruptcy court within this circuit also concluded:
>
> In point of fact, the process of garnering fraudulently-transferred assets back into the bankruptcy estate—to the resultant benefit of all creditors—is one of those proceedings which is by its very nature essential to the adjustment and restructuring of debtor-creditor relationships that is at the core of federal bankruptcy jurisdiction.

<u>Kelley v. JP Morgan Chase & Co.</u>, 464 B.R. 854, 863 (Bankr. D. Minn. 2011)

(citation omitted).  "The preference and fraudulent transfer claims arise both under

Title 11 and in a case under Title 11 and are by definition 'core' issues under

§ 157(b)(2)(F) & (H) for which a bankruptcy court has authority to enter final

adjudications."  <u>In re Direct Response Media, Inc.</u>, 464 B.R. at 646.

Other cases, however, have read <u>Stern</u> to have a broader effect in this

setting—and thus a narrowing of bankruptcy courts' authority to issue final

judgments.  See Kirschner v. Agoglia, No. 11 Civ. 8250, 2012 WL 1622496

(S.D.N.Y. May 9, 2012); Heller Ehrman LLP v. Arnold & Porter, LLP (In re

Heller Ehrman LLP), 464 B.R. 348, 354 (N.D. Cal. 2011); Field v. Lindell (In re

The Mortgage Store, Inc.), 464 B.R. 421, 426 (D. Haw. 2011); Paloian v. Am.

Express Co. (In re Canopy Fin., Inc.), 464 B.R. 770 (N.D. Ill. 2011); McCarthy v.

Wells Fargo Bank (In re El-Atari), No. 1:11cv1090, 2011 WL 5828013, at *2

(E.D. Va. Nov. 12, 2011) ("Stern, together with Granfinanciera, clearly supports

the conclusion that the authority to issue a final decision in a fraudulent

conveyance action is reserved for Article III courts.").  In In re The Mortgage

Store, the Hawaii District Court held:

> Other courts have found that Stern's rationale applies to fraudulent
> transfer claims such that bankruptcy courts cannot enter judgment and
> instead must enter findings and recommendations.  See, e.g., In re
> Canopy Fin., Inc., 2011 WL 3911082 (N.D. Ill. Sept. 1, 2011); see
> also In re Teleservices Group, Inc., 456 B.R. 318 (Bankr. W.D. Mich.
> 2011).  Courts have come to this conclusion in light of the fact that
> Stern relied on Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.
> Ct. 2782, 106 L.Ed.2d 26 (1989), in concluding that a debtor's
> counterclaim is not a matter of "public right" that can be determined
> outside the judicial branch.  Granfinanciera held that a fraudulent
> transfer claim, although technically a "core proceeding," did not assert
> a public right such that a defendant has a right to a jury trial.  Stern
> found particularly relevant that in Granfinanciera, "[w]e reasoned that
> fraudulent conveyance suits were 'quintessentially suits at common
> law that more nearly resemble state law contract claims brought by a
> bankrupt corporation to augment the bankruptcy estate than they do
> creditors' hierarchically ordered claims to a pro rata share of the
> bankruptcy res." Id. at 56, 109 S. Ct. 2782.  As a consequence, we
> concluded that fraudulent conveyance actions were "more accurately
> characterized as a private rather than a public right as we have used

those terms in our Article III decisions." <u>Id.</u> at 55, 109 S. Ct. 2781.
<u>Stern</u>, 131 S. Ct. at 2614. Analogizing to <u>Granfinanciera</u>, <u>Stern</u> found
that a debtor's counterclaim, like a fraudulent transfer claim, is 'one
under state common law between two private parties' such that the
bankruptcy court could not enter final judgment. <u>Id.</u> Given <u>Stern's</u>
reliance on <u>Granfinanciera</u>, some courts have reasoned that <u>Stern</u>
"made clear that the Bankruptcy Court lacks constitutional authority
to enter final judgment on [fraudulent transfer claims,"] and must
instead enter findings and recommendations. <u>In re Canopy</u>, 2011 WL
3911082, at *4; <u>see also</u> <u>In re Teleservices</u>, 2011 WL 3610050, at *5
("But Stern, when combined with <u>Granfinanciera</u>, at the very least
suggests that a bankruptcy court's entry of a money judgment in
connection with an avoided fraudulent transfer is constitutionally
suspect.").

<u>In re The Mortgage Store, Inc.</u>, 464 B.R. at 425 – 26. The United States District

Court for the Southern District of New York also adopted a broad reading of <u>Stern</u>

in holding:

In further tracing the Supreme Court's development of the "public
rights" exception, the <u>Stern</u> Court relied heavily on <u>Granfinanciera,
S.A. v. Nordberg</u>, 492 U.S. 33 (1989), which held that the Seventh
Amendment right to a jury trial applied to fraudulent conveyance
actions. <u>Id.</u> at 36. <u>Granfinanciera</u>, as the <u>Stern</u> Court explained,
rejected the notion that fraudulent conveyance actions were cases
involving "public rights." <u>See</u> <u>Stern</u>, 131 S. Ct. at 2614 (citing
<u>Granfinanciera</u>, 492 U.S. at 54–55). According to the <u>Stern</u> Court,
<u>Granfinanciera</u> "reasoned that fraudulent conveyance suits were
'quintessentially suits at common law that more nearly resemble state
law contract claims brought by a bankrupt corporation to augment the
bankruptcy estate than they do creditors' hierarchically ordered claims
to a pro rata share of the bankruptcy res.'" <u>Id.</u> (quoting
<u>Granfinanciera</u>, 492 U.S. at 56). Indeed, the Court in <u>Stern</u> analogized
the state law tortious interference counterclaim before it to the
fraudulent conveyance claim before the Court in <u>Granfinanciera</u> to
hold that the counterclaim was a "private rights" claim that had to be
adjudicated by an Article III Court. <u>Id.</u> To now conclude that the
very claim presented in <u>Granfinanciera</u>—a fraudulent conveyance

claim—is a "public rights" claim would be totally at odds with the Stern Court's analogy to <u>Granfinanciera</u>.

Further, like the tortious interference counterclaim in <u>Stern</u>, the Trustee's claims in this adversary proceeding "exist[ ] without regard to [the] bankruptcy proceeding." <u>Stern</u>, 131 S. Ct. 2618. The bankruptcy reorganization plan is already confirmed, and the fraudulent conveyance claims brought by the Refco Litigation Trust are simply intended to increase payouts to creditors under the confirmed plan. The Movants are sued as coconspirators in the Refco fraud. They have filed no proofs of claims or otherwise "consented" to the Bankruptcy Court's resolution of the Trustee's claims, <u>see id.</u> at 2614–18, even assuming <u>arguendo</u> that that would make a difference. These claims for fraudulent conveyance under New York statutory law are claims that seek "to augment the bankruptcy estate—the very type of claim that . . . must be decided by an Article III court." <u>Stern</u>, 131 S. Ct. at 2616 (citing <u>Granfinanciera</u>, 492 U.S. 33; <u>Northern Pipeline</u>, 458 U.S. 50).

<u>Kirschner</u>, 2012 WL 1622496, at *3 – 4.

This Court, as noted, has taken a narrow reading of <u>Stern</u>—and does not retreat from that reading here. Such a narrow reading would certainly suggest that the Court would reject Defendant's conclusion that the adversary is a non-core proceeding over which it has no dispositive authority.

The conclusion would readily conclude this adversary is a core proceeding if Defendant had filed a proof of claim. Here, however, Defendant has not filed a proof of claim. This gives the Court some pause in fully embracing and applying the case law finding that bankruptcy courts retain the power after <u>Stern</u> to enter final judgments on fraudulent transfer claims.

The Court, however, rejects Defendant's argument that the lack of a proof of claim is fatal to the Court's ability to even hear the matter at all, or requires the parties to file a request for withdrawal of reference based on <u>Blixseth</u> and cases adopting it.  Even the majority of cases concluding that fraudulent conveyance and/or preference claims are no longer proceedings over which the bankruptcy court has dispositive authority acknowledge — at a minimum — that the bankruptcy court may still hear the matter and issue proposed findings of fact and conclusions of law for the district court's review.  <u>See</u> <u>Official Comm. Of Unsecured Creditors v. Nat'l Patent Dev. Corp. (In re TMG Liquidation Co.)</u>, No. 7:12-629, 2012 WL 1986526, at *2 (D.S.C. June 4, 2012) (listing cases); <u>Burns v. Dennis (In re Se. Materials, Inc.)</u>, 467 B.R. 337, 339 n.35 (Bankr. M.D.N.C. 2012) (listing cases); <u>In re Tolliver</u>, 464 B.R. at 734; <u>In re Am. Hous. Found.</u>, No. 09-20232, 2012 WL 443967 (Bankr. N.D. Tex. Feb. 10, 2012); <u>Adelphia Recovery Trust v. FLP Group, Inc.</u>, No. 11 Civ. 6847, 2012 WL 264180 (S.D.N.Y. Jan. 30, 2012); <u>Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)</u>, 456 B.R. 318, 339 (Bankr. W.D. Mich. 2011).

In one recent case, the movants did not file proofs of claim in the bankruptcy case and the bankruptcy court addressed the issue at length:

> I agree with my colleagues that <u>Stern's</u> holding should be read narrowly and thus restricted to the case of a "state-law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."  131 S. Ct. at 2620.  I note also that numerous other recent

decisions have agreed with the narrow interpretation.  See, e.g., Kirschner v. Agoglia (In re Refco, Inc.), 461 B.R. 181 (Bankr. S.D.N.Y. 2011); Fox v. Picard (In re Madoff), — F. Supp. 2d —, Nos. 10 Civ. 4652(JGK), 10 Civ. 7101(JGK), 10 CIV 7219(JGK), 11 Civ. 1298(JGK), 11 Civ. 1328(JGK), 2012 WL 990829 (S.D.N.Y. Mar. 26, 2012).  Like this Court in Direct Response, both the Refco and Madoff courts concluded that a fraudulent transfer action can be adjudicated by the bankruptcy court.  Direct Response, 2012 WL 112503, at *11 ("[P]reference and fraudulent transfer claims arise both under Title 11 and in a case under Title 11 and are by definition 'core' issues under § 157(b)(2)(F) & (H) for which a bankruptcy court has authority to enter final adjudications."); Refco, 461 B.R. at 192 ("Given the repeated and emphatic limiting language in Stern, . . . and the role of fraudulent transfer claims under the Bankruptcy Code, including their management and resolution ultimately by the bankruptcy courts in the context of Congress' bankruptcy scheme, Article III of the Constitution does not prohibit the bankruptcy courts' determination of fraudulent transfer claims under 11 U.S.C. §§ 544 and 548 by final judgment."); Madoff, 2012 WL 990829, at *12 n.5 ("[Appellant] points to no language in Stern that can reasonably be interpreted as holding that the power explicitly accorded by Congress to the bankruptcy courts to enter judgment in fraudulent transfer actions . . . violates Article III of the United States Constitution.  The specific issue in Stern was the constitutional authority for a bankruptcy court to enter judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim. . . . The adjudication of fraudulent transfer and avoidance actions is a basic feature of that division of labor.") (citations omitted).  Thus, I find that Stern is not applicable to this action, as it does not involve a state-law counterclaim by the estate.  Consequently, I conclude that I can enter a final judgment on the core preference, post-petition transfer, fraudulent transfer, and unjust enrichment claims and issue proposed findings of fact and conclusions of law on the non-core causes of action.

In re DBSI, Inc., 467 B.R. 767, 772 – 73 (Bankr. D. Del. April 19, 2012).  The court thus found that it had jurisdiction over all the claims—and could issue proposed findings and conclusions even on those non-core claims.

This Court adopts this rationale and concludes, at a minimum, it has the authority to hear the matter and prepare proposed findings and conclusions. As the Bankruptcy Court of the District of Massachusetts held:

> [T]he Court need not at this juncture decide the issue of its authority to enter final judgment on the fraudulent transfer counts. The Court will proceed to try this adversary proceeding and will decide its authority to enter final judgment in conjunction when it prepares its findings and conclusions. If I conclude that a bankruptcy judge lacks authority to enter final judgment, I will enter proposed findings and conclusions under § 157(c)(1). If I conclude that a bankruptcy judge is authorized to enter final judgment, I will enter findings and conclusions and final judgment but add that if a reviewing court ultimately determines that the bankruptcy court did not have authority to enter final judgment over one or more counts, the bankruptcy court's findings of fact and conclusions of law may be treated as proposed findings and conclusions, subject [to] entry of final judgment by the district court after review pursuant to 28 U.S.C. § 157(c)(1).

Miller v. Grosso (In re Miller), 467 B.R. 677, 684 (Bankr. D. Mass. 2012). This Court adopts this rationale and intends to issue a decision consistent with its approach. See id.; see also In re DBSI, Inc., 467 B.R. at 772 – 73; Neisfelner v. Blavatnik (In re Lyondell Chem. Co.), 467 B.R. 712 (S.D.N.Y. 2012); Feuerbacher v. Moser, No. 4:11-cv-272, 2012 WL 1070138 (E.D. Tex. Mar. 29, 2012). Either way, the Court retains jurisdiction and authority to hear and decide the matter— finally or in a proposed form.

It is important to reiterate the fact Defendant has not filed a proof of claim does not change this analysis. See In re Rothstein, Rosenfeldt, Adler, P.A., No.

11-62612, 2012 WL 882497, at *2 (S.D. Fla. Mar. 14, 2012) (court maintains

jurisdiction in fraudulent conveyance claim when no proof of claim has been

filed); Kirschner, 2012 WL 1622496, at *6 (when no proof of claim has been filed,

at the least, bankruptcy court has the authority to issue a report and

recommendation); In re Miller, 467 B.R. 677 (no proof of claim was filed, however

the Court may enter proposed findings of fact and conclusions of law); Tabor v.

Kelly (In re Davis), Bankr. No. 05-15794, Adv. No. 07-05181, 2011 WL 5429095,

at *15 (Bankr. W.D. Tenn. Oct. 5, 2011) (when no proof of claim has been filed,

bankruptcy court still has the authority to issue a report and recommendation).

Defendant also argues that "to the extent that the Bankruptcy Court has

authority to issue proposed findings of fact and conclusions of law to the District

Court, the Court here should abstain from doing so to avoid a wasteful and

unnecessary duplicative set of proceedings when this matter ultimately goes before

the District Court." (ECF Doc. No. 32, at 11.) The Court finds Defendant's

"judicial resource" argument, and especially its reliance on Blixseth, is misplaced.

Courts across the country, even those finding that the Stern holding is extremely

broad, have refused to extend Stern as far as Blixseth did. See In re Tolliver, 464

B.R. at 734; RES-GA Four LLC v. Avalon Builders of GA, LLC, No. 5:10-cv-463,

2012 WL 13544, at *9 (M.D. Ga. Jan. 4, 2012) (listing cases). Defendant's

concern about "judicial resources" is unpersuasive and the Court finds that at a

minimum it has the power to enter a report and recommendation for consideration

by the district court.  See In re Appalachian Fuels, LLC, 2012 WL 1344984, at *1;

In re DBSI, Inc., 467 B.R. at 775; In re El-Atari, 2011 WL 5828013, at *6.  The

Court finds Defendant has provided no persuasive basis for abstention.

   This Court also specifically rejects Defendant's argument that the Court

should enter an order "requiring the plaintiff to file a motion to withdraw the

reference." (ECF Doc. No. 32, at 12.)  A party can move for withdrawal of

reference under 28 U.S.C. § 157(d), which states:

> The district court may withdraw, in whole or in part, any case or
> proceeding referred under this section, on its own motion or on timely
> motion of any party, for cause shown.  The district court shall, on
> timely motion of a party, so withdraw a proceeding if the court
> determines that resolution of the proceeding requires consideration of
> both title 11 and other laws of the United States regulating
> organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

> Permissive withdrawal of the reference to the bankruptcy judge is
> within the sound discretion of the district court and is predicated upon
> cause shown on a case-by-case basis.  In considering whether to grant
> permissive withdrawal of reference, district courts have considered
> the following factors: (1) whether the proceeding is core or non-core;
> (2) the uniform administration of bankruptcy proceedings; (3)
> expending the bankruptcy process and promoting judicial economy;
> (4) the efficient use of debtors' and creditors' resources; (5) the
> reduction of forum shopping; and (6) the preservation of the right to a
> jury trial.

In re TMG Liquidation Co., 2012 WL 1986526, at *3.

The Court finds no basis for ordering the parties to file a request for
withdrawal of reference with the District Court in this case.  See In re Rothstein,
Rosenfeldt, Adler, P.A., 2012 WL 882497.  This Court's familiarity with the
bankruptcy and the related adversaries, familiarity with preferential
transfer/fraudulent conveyance actions, and the additional reasons discussed above
strongly weigh against any need for withdrawal of reference.  See In re Lyondell
Chem. Co., 2012 WL 1038749; Field v. Estate of Rose Kepoikai (In re Maui Indus.
Loan & Fin. Co.), No. 11-00559, 2011 WL 6934757, at *9 – 10 (D. Haw. Dec. 29,
2011).

**WHEREFORE,** The Right Place Inc.'s objection to this Court hearing this
matter is **OVERRULED**.

Dated and Entered: July 12, 2012

_____
THAD J. COLLINS
**CHIEF BANKRUPTCY JUDGE**

24